The State v. Stigall et al.

## THE STATE v. STIGALL AND TURNLEY.

1. The father of a legitimate child is entitled to its custody and possession, in preference to the mother, when the father and mother are living separate.

2. When children of sufficient age to have a discretion to choose are brought up on *habeas corpus* to be removed from the custody of one parent to that of the other, the court or judge will ordinarily make no order for their delivery, but will see that the children are allowed to go with such parent, as they may choose.

3. When a child of tender years, having no discretion to choose, is in the custody of the father, it will not be taken from his custody, and given to the mother, (*semble*) however gross the father's conduct or character might be.

4. When a child of *very tender* years is in the custody of the mother, it is in the discretion of the court or judge to deliver it to the father, or permit the mother to retain it, as from their character and circumstances may seem most for the advantage of the child.

5. In a case where no other facts appeared, than that the father and mother were living separate, with mutual recriminations, on a *habeas corpus* prosecuted by the father to remove their infant children from the custody of the mother, who was living with her father, the court ordered that the eldest boy, of five years old, be delivered to the father, and that the others, a girl of one year and boy of three and a half years old, remain with the mother.

On a *habeas corpus* to the defendants to bring up the bodies of three infant children of the prosecutor.

The case was submitted without argument upon the papers to RANDOLPH and OGDEN, Justices.

The opinion of the court was delivered by

RANDOLPH, J. The return to this writ shows that the defendant, Elizabeth M. Stigall, is the mother of the three children required to be produced in court, and that they and their mother are living for the time present with her father, Charles W. Turnley, the other defendant, but not, as he retains in his custody or control, but merely there at the mother's request for support and consolation. The father prosecutes the writ, and demands the custody of his three children, and that they should be taken from the mother, and given to him. The parents, without a divorce, live separate and apart; the mother having left her husband's abode and taken her children with her, in her return sets up, by way of excuse, various grounds of crimination against the husband, all of which he, in his answer, ex-

plains or denies, and recriminates the mother and her father. Time was given for the parties to take proof, but none has been taken, and no argument or point has been furnished by counsel, so that the court are under the necessity of looking into the cases, and deciding on general principles, without the intervention of special circumstances. From the return it appears that the three children were of the following ages : Charles William Stigall, born April 30, 1844, Robert Stigall, January 29, 1846, and Elizabeth Rebecca Stigall, May 27, 1848 ; so that at the return of the writ Elizabeth was thirteen months old, Robert three years and five months, and Charles five years and two months.

The custody of children, as a general principle, belongs to one or both of the parents, yet for their protection and education, or the preservation of their property, courts of equity, in the exercise of a sound discretion, will deprive both parents of the custody, and place them with third persons. 2 *Story's Equity*, § 1341, and the cases there referred to.

When a child is brought up on *habeas corpus*, if of sufficient age and discretion, the court will only ascertain whether the child is under restraint, and if so will merely make an order setting him at liberty, to go where he chooses; and if it be necessary to give effect to that order, will send an officer to see that it is respected and observed. And the same rule applies when a wife, apprentice, or any other person who has arrived to years of discretion, is brought up on *habeas corpus*, the court usually refusing to make other order, unless it be absolutely necessary. *Rex* v. *Deleval*, 3 *Burr.* 1434 ; *Rex* v. *Clarksen*, 1 *Strange* 444 ; *Rex* v. *Smith*, 2 *Ib.* 982 ; *Case of Woolstonecraft*, 4 *J. C. R.* 80.

But where the child is of tender years, and the father and mother have separated, or the wife has left the abode of her husband, it often becomes necessary for the court or judge, on the return of the *habeas corpus*, to determine as to the custody of the child, without waiting for the slower action of the chancellor, or referring the matter to him, as the *parens patriæ*, in the place of the sovereign. There are two classes of cases, in the books, very distinctly marked in character and princi-

ple, especially in the English decisions; the one is when the writ is brought up by the mother to remove the custody of the child from the father, or from his control, and the other is when the father sues out the writ to deprive the mother of the custody, and give it to the father. The general principle operating in both cases is, that the father, as head of the family, is entitled to the custody and control of his legitimate child, and may by will delegate that custody to a guardian. *Case of Nickerson*, 19 *Wend.* 16 ; *Case of Chegay*, 18 *Wend.* 637 ; 25 *Wend.* 72 ; 3 *Hill* 400 ; 9 *J. B. Moore* 279 ; 5 *East* 221 ; 4 *Ad. and El.* 624 ; *Story's Equity*, § 1341, *a ;* 1 *Bl. Com.* 453.

But in the case of illegitimate children, the mother, and not the putative father, is entitled to the custody ; and if deprived of it, the court will restore them to her. *Rex* v. *Mosely*, 10 *Vesey* 52, *note a ; Rex* v. *Soper*, 5 *T. R.* 278 ; 7 *East* 579 ; 2 *Inst.* 375 ; 2 *Mass.* 109.

Under the general rule of the common law, courts have not felt authorized to take the child from the father, and give it to the mother, although some very strong cases have arisen which seem to demand the interference of the court. Thus, in the case of *De Manneville*, 5 *East.* 221, the court refused to take a child of eight months old from the father, and give it to the mother, on the allegation that he intended to take it out of the kingdom ; and even the chancellor, on application in the same case, (10 *Vesey* 52) merely made an order restraining the father from removing the child from the kingdom, but refused to order it to be delivered to the mother, living separate from the husband. And in the ·case of *Skinner*, 9 *Moore* 279, wherein the mother applied to have the child removed from the father, who was living in jail and cohabiting with a mistress, the court refused to make the order, referring the matter to *chancery*, as the proper tribunal  To the same effect is *Ball* v. *Ball*, 2 *Sim.* 35, and *Wellesley* v. *The Duke of Beaufort*, 2 *Russ.* 9. This rule seemed so harsh and unsatisfactory that parliament was constrained to mitigate its rigor, and now, by 2 & 3 *Vict. c.* 54, § 1, the chancellor or master of the rolls, upon petition of the mother of any infant in the custody of the father, or other person under his authority, may make or-

der for the access of the petitioner, or, if the infant be within the age of seven years, for the delivery of such infant to the mother, until he attains such age, under convenient regulations. 2 *Harr. Dig.* 3379, *Tit. Infant* 4. But when the father had asked a court of law or a judge to grant an order to reinvest him with the actual custody of his child, the court, before making such order, would look into the case, and notwithstanding the presumed right of the father, would exercise a discretion in the matter : such ever was and still is the law, with much less change in the rule than in the mode of exercising the discretion, or the extent of its exercise. The principle of the action of the court, or refusal to act, is this : the power and right of the father is allowed for the benefit of the child, and not to enable him to govern with arbitrary caprice or tyrannical control, so as to subvert the very object of the law in giving him the authority. Thus, when the children would be exposed to cruelty or gross corruption, immoral principles or habits, or the father is not of ability to provide for the support, education, and future prospects of the child, and the mother, or person with whom the child resides is able, the court will make no order granting the custody of the child to the father. And, too, if the child is of tender years, and especially if a female or of sickly constitution, in the custody of the mother, against whom there is no charge but inability to live with her husband, the court would make no order of removal. The discretion is pretty broad, and perhaps extending with the improvements and refinements of the age, yet it is not arbitrary, but based on sound principles, yet, like all other discretionary proceedings, will take its hue from the officer exercising it. In *Rex* v. *Greenhill*, 4 *Ad. & El.* 624, the father left his home and family, and was cohabiting with a mistress; then the mother left and took with her her three young children. The husband was otherwise of good character, and had large property, the mother none. He offered to abandon his mistress and be reconciled to his wife, or to take the children to his mansion, to be educated under the supervision of his mother, and away from any immoral influence. The wife refused, and the court made the order of removal, on the ground

that it would be for the benefit of the children, and there being nothing of cruelty or corruption about the father or his home, the law gave him the custody. But in *Rex* v. *Dobbins,* and in *Rex* v. *Wilson,* in the same book, p. 664–5, *note,* where the conduct of the father at his home came within the discretionary exceptions, the court refused to take the child from the mother. In the matter of *Waldron,* 13 *Johns. Rep.* 419, where the father was poor, and his wife went home to her father, who was of large estate, when she was delivered of a child and died, leaving the child the heir apparent to his grandfather, and when it was still of tender age, the father applied for his custody ; but the court refused it, on account of the inability of the father and the great benefit of the child, and that the special powers of the *Court of Chancery* in the case invoked would be sufficient to correct any evil. In the *case of Nickerson,* 19 *Johns.* 16, the court say the father is the natural guardian, and entitled to the custody of the child, if there be no danger of ill usage or he be not of grossly immoral principles or habits, or unable to provide for him. In the *De Hautville case,* the child was but twenty-one months old, very sickly, and, in the opinion of physicians, not of an age to be separated from his mother ; and, on these grounds the court rightfully refused to remove the child from the mother, and place him with the father. The case derives interest from the station of the parties, the extended and exciting evidence in relation to the history of the marriage and separation of the parents, as well as from the great ability and learned investigations of both counsel and court, yet in its simple details is of no extraordinary character, and though differing in result from *Rex* v. *Greenhill,* yet it comes within the principles and scope of the exceptions stated by the court in that case ; the real difference is in the mode and extent of the discretion. In the English case the court, in a very strong case, exercised their discretion, and removed the child because they considered the exercise within the rule and for the benefit of the child : in the American case the court, in not a very strong case, refused its exercise, for pretty much the same reasons. In the case of *Barry* v. *Mercein,* to be found in 25 *Wend.* 72, 3 *Hill* 401,

and 8 *Paige* 47, the same difficulty occurs as to the mode of exercising the discretion, but upon the general principles of law there is no great diversity among the several jurists who examined the matter, and these principles will generally be found to accord with what has been before stated.    In *Grey's case*, 6 *Law Journal* 529, the child was of tender years and feeble health, and was left with the mother, though living apart from the husband.    So in the present case, the two younger children, one of thirteen months and the other of about three years, are too young to be removed, for any practical or useful purpose to themselves at least, and as nothing is proved against the mother but her inability to live with her husband, they should for the present remain with her; but an order may be entered to deliver the eldest child to his father.

CITED *in Magee* v. *Holland*, 3 *Dutch.* 99 ; *State* v. *Baird*, 3 *C. E. Gr.* 199.