Wallace *v.* Wallace.

---

HESTER WALLACE, appellant,

*v.*

WILLIAM WALLACE, respondent.

[Filed March 2d, 1903.]

Where the proofs in an action for divorce show that the residence of the complainant in this state was acquired with the *animus manendi*, corroborated by satisfactory evidence as to such intention on her part to reside permanently in the state, her avowal that her object in coming

into the state was to obtain a divorce, while it is a pertinent fact to be considered in determining the *bona fides* of her residence, is neither a controlling circumstance nor a bar to her right to obtain a divorce under our statute.

---

The appeal in this case was from a decree advised by Vice-Chancellor Pitney, dismissing a bill for divorce. The opinion is reported in *17 Dick. Ch. Rep. 509.*

The reference in this cause had been made to Frederic Adams, Esq., one of the special masters in chancery, and depositions were taken before him. He made his report on the 28th day of August, 1901, and therein stated that he had reached the following conclusions on the law and on the facts:

1. A person may legitimately move to another state in order to avail himself, or herself, of the laws of that state. This is a general rule, applicable to suitors in divorce cases, as well as to other persons. Consequently, an avowal that the object in moving to another jurisdiction was to get a divorce does not show illegality or even impropriety of motive, though it may well induce the court to require strict proof of residence in good faith. *Streitwolf* v. *Streitwolf, 13 Dick. Ch. Rep. 563; Pohlman* v. *Pohlman, 15 Dick. Ch. Rep. 28.* Chancellor Green, in *Brown* v. *Brown, 1 McCart. 78,* leaned to the opposite conclusion, but the decree in that case was reversed by the unanimous vote of the court of errors. The grounds of reversal do not appear, as the opinion prepared by Chief-Justice Whelpley was lost in the hands of the reporter. *Brown* v. *Brown, 2 McCart. 499.*

2. Since mere residence, without an *animus manendi,* will not support a divorce suit, the existence of the *animus manendi* must be proved as fully as other material facts are required to be proved. The sworn statement of the complainant is not enough. It must be corroborated by facts preceding and attending the change of residence. *Tracy* v. *Tracy, 17 Dick. Ch. Rep. 807.*

3. The facts elicited by the re-examination of the complainant and Mrs. Boulanger corroborate, beyond a reasonable doubt,

Wallace *v.* Wallace.

the complainant's declaration that her intention is to reside permanently in New Jersey. It is to be remembered that the complainant was married at seventeen, was a mother at eighteen, and was deserted by her husband and left to support herself and her child when only twenty-four. It was natural and almost inevitable that she should resume her place in the household of her mother, who is a woman of evident force and capacity; that she should rely on her mother's aid and conform to her mother's plans. It appears that Mrs. Boulanger, though she was born in New York City and has married two men who lived and did business in New York, is yet very much of a New Jersey woman. Her father, Charles Hertel, spent most of his life in Jersey City, where he carried on the trade of woodturner. Her three brothers—Joseph, William and Charles Hertel—were born and now reside in Jersey City, and have always lived and done business there. She has no relatives living in New York City. When her last husband, Cammille Boulanger, died, in September, 1896, she had to make a living for herself and to contribute, according to her ability, to the support of her two children and granddaughter. After keeping boarders for not quite a year in New York City, she moved, in November, 1897, to Jersey City, where prices were lower than in New York City, and has lived there ever since, near to her three brothers, and both she and her daughter, who is a member of her household, do work on neckties for a New York business house. Her son, who is an actor, and who is on the road a good deal, lives with her and votes in Jersey City. Mrs. Boulanger testifies that her brother, Joseph Hertel, who is a real estate man, advised her to move to Jersey City on the ground of economy. This was evidently good advice, and that she should take it was the obvious and judicious thing to do. She and her daughter both testify that they do not intend to leave Jersey City, but that they expect to remain there. I not only see nothing in the cause to discredit their testimony on this point, but am persuaded of its truth.

*Mr. Thomas S. Henry,* for the appellant.

Wallace *v.* Wallace.

The opinion of the court was delivered by

VROOM, J.

The report of the special master sets forth in a clear and concise manner all the essential features of the testimony taken in this cause and necessary to its determination. Based upon this testimony, the finding was that the complainant's act in moving into this state for the purpose of getting a divorce did not show either illegality or impropriety of motive, and that at the time of exhibiting her bill she had an actual residence in this state to support a divorce, shown by her intention to reside here permanently, and proven, not only by her own testimony, but corroborated beyond a reasonable doubt.

A careful examination of the testimony has satisfied me that the conclusions reached by the master are correct.

Admittedly, the only question in the case is that of the actual residence or domicile of the complainant, and whether this residence was such as entitled her to maintain this suit for divorce. There is no dispute as to the fact that the residence of the defendant was in New York, and that no service of process was had upon him within the jurisdiction of New Jersey, he having been brought into court by service of notice as a non-resident defendant in New York, in accordance with the provisions of our statute and the practice of the court of chancery. In dismissing the complainant's bill, the court below held that when a complainant in a divorce suit has been deserted in another state and has moved into New Jersey for the purpose of securing a divorce in such state, she acquired no domicile such as to give to the courts of this state jurisdiction, where no service of process is had on the defendant in New Jersey.

It is not deemed essential, for the determination of this case, to enter upon either an extended consideration of the extraterritorial service of notice or of the power to grant a divorce based upon an extra-territorial service. That such decree may be made, and that it will have extra-territorial force, is settled in this court by the case of *Felt* v. *Fell, 14 Dick. Ch. Rep. 606,*

Wallace *v.* Wallace.

and I agree with the learned vice-chancellor that "it has been finally determined in the great majority of jurisdictions, including the supreme court of the United States, as the final arbiter, that such a decree may be made which will have extra-territorial force." *Atherton* v. *Atherton, 181 U. S. 155.* In this case, Mr. Justice Gray presents a very careful exposition of the question and cites and comments at length upon the decisions of the courts of the different states.

In order, however, to render the divorce valid, either in the state in which it is granted or in another state, there must, unless the defendant appeared in the suit, have been such notice to him as the law of the first state required. *Atherton* v. *Atherton, supra; Cheeley* v. *Clayton, 110 U. S. 701.*

The statute of this state, in defining the causes for which divorces may be decreed by our courts, provides

"or when the complainant or defendant shall be a resident of this state at the time of filing the bill of complaint and the complainant or defendant shall have been a resident of this state for the term of two years, during which such desertion shall have continued."

In the case of *Tracy* v. *Tracy,* in this court (*17 Dick Ch. Rep. 810*), the definition of residence is adopted as the place where a person's habitation is fixed, without any intention of removing therefrom, and it was well said by the special master, in his finding in this case, that mere residence, without an *animus manendi,* will not support a divorce suit, and that the *animus manendi* must be proved as fully as other material facts are required to be proved.

But it was insisted by the learned vice-chancellor that in addition to the requirements of the statute as to residence, as above defined, that the residence cannot be acquired with the desire or intention to procure a divorce. On page 519 (*Wallace* v. *Wallace, supra*), he says: "It has been my rule, and I believe that of the other members of the court, not to grant a decree for divorce for desertion based upon a service out of the jurisdiction and a domicile not matrimonial, unless such domicile has been acquired under circumstances showing suffi-

cient and controlling reasons for its acquisition other than the desire to procure a divorce—and certainly never when the avowed object was to obtain that relief."

The practical effect of this doctrine is to prevent a citizen who removes into this state from another, even though such removal be made *bona fide* with *animus manendi,* from acquiring a residence here sufficient to sustain an action for divorce, unless some reason for acquiring such residence be shown other than the desire to procure a divorce; its legal effect is to substitute for the public policy established by the legislature a judicial policy of contrary import. I concur entirely in the principle laid down by the special master in this case that a person may legitimately move to another state in order to avail himself of the laws of that state, and this includes, necessarily, the right to remove into the jurisdiction of this state for the purpose of procuring a divorce, the only requirements being absolute good faith in the taking up of such residence and of the *animus manendi;* in other words, the *factum* of residence and the *animus manendi* proves the domicile. *Magowan* v. *Magowan, 12 Dick. Ch. Rep. 324; Harral* v. *Harral, 12 Stew. Eq. 285.*

It is true that Chancellor Green, in the case of *Brown* v. *Brown, 1 McCart. 78,* refused a divorce because "the actual residence in this state was adopted under circumstances which warrant the conclusion that the change of residence was made for the purpose of obtaining a divorce," and yet the decree in that case was unanimously reversed in this court. The opinion of Chief-Justice Whelpley, in this court, was not filed nor reported, yet there appears no warrant for assuming that such reversal "may have been based upon a different view of the facts." The opinion of Chancellor Zabriskie, in *Coddington* v. *Coddington, 5 C. E. Gr. 263,* states the grounds upon which *Brown* v. *Brown* was reversed in this court. He says (at *p. 265*): "And it was well understood that the last case (*Brown* v. *Brown*) was reversed in the court of appeals on the ground that the chancellor held that, notwithstanding the act of 1857, a residence of five years during the desertion was still required;

the complainant had resided in the state more than three years during the desertion; and also because the chancellor held that a residence resumed in this state, seemingly for the purpose of bringing a suit, although there was an actual change of residence, was not sufficient under the requirements of the act."

This extract from the opinion in *Coddington* v. *Coddington,* it seems to me, leaves no doubt whatever as to the grounds of the reversal in this court of the decree in *Brown* v. *Brown.*

In the case of *Tracy* v. *Tracy, 17 Dick. Ch. 807,* this court held that "the fact that a person comes into a state for a specified purpose does not necessarily prevent him from procuring a residence, if at the time of coming he has no definite idea of removing from the state when that purpose is accomplished, or at some definite period."

The case of *McGean* v. *McGean, 18 Dick. Ch. Rep. 285,* in this court, was not decided upon the question of the *bona fides* of the residence of the petitioner in this state. The affirmance of the decree below was expressly put upon the ground that the petitioner had failed to establish the desertion of the defendant for the statutory period by that *quantum* of proof which the law requires.

I do not understand that the decision in *Sweeney* v. *Sweeney, 17 Dick. Ch. Rep. 357,* referred to in the opinion below, comes to the same conclusion as that reached by the vice-chancellor in this case. The chancellor, in that case, says, in referring to the proofs, that "they would perhaps justify the conclusion that the alleged residence was acquired with the main and predominant intent to enable the petitioner to seek relief for the desertion she complained of," but he continues: "Without reference to that phase of the case, I feel bound to say that petitioner had not, at the acquisition of the alleged residence, the *animus manendi* in New Jersey which is essential to give jurisdiction to this court, or at least to leave the matter in such serious doubt that jurisdiction ought not to be assumed therein." It was upon this ground, and the fact that the proofs failed to show a willful or obstinate desertion, that the decree was not granted.

The proofs in this case, showing that the residence of the complainant was acquired with the *animus manendi,* and that she is corroborated by satisfactory evidence as to her intention to remain permanently in New Jersey, the avowal on her part that her object in moving into the state was to obtain a divorce cannot affect the *bona fides* of her residence or her right to a divorce under the provisions of our statute.

The decree below should be reversed.

*For reversal*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, BOGERT, VREDEN-BURGH, VOORHEES, VROOM—11.

*For affirmance*—None.