Joseph BARBIER, Plaintiff,

v.

GOVERNOR, STATE OF NEW JERSEY, Attorney General, State of New Jersey, Hon. Harold Nitto, J.J.D.R.C., Passaic County, and Rose M. Barbier, Defendants.

Civ. No. 78–2607.

United States District Court, D. New Jersey.

Aug. 22, 1979.

Joseph Barbier, pro se.

John J. Degnan, Atty. Gen., Trenton, N. J. by Blossom A. Peretz, Deputy Atty. Gen., Newark, N. J., for defendants Governor, Attorney General and Judge Nitto.

No appearance for defendant Rose M. Barbier.

## OPINION

BIUNNO, District Judge.

Barbier filed a pro se complaint challenging the constitutionality of certain New Jersey statutes dealing with the custody of minor children whose parents live separately, or are about to do so. He claimed that these statutes illegally discriminate against him on the basis of his sex, in violation of U.S.Const. Amend. 14, and 42 U.S.C. Sec. 1983.

The complaint came to the Court's early attention by reference from the clerk because of a request for convening a three-judge court. By memorandum order of November 3, 1978, the Court noted that the statute calling for that kind of tribunal, 28 U.S.C. Sec. 2281, had been repealed by Pub.L. 94–381, August 12, 1976.

In the same memorandum, the Court expressed doubts of its jurisdiction in the case, but since the complaint was pro se and inartfully drawn, it postponed entry of an order of dismissal and set a date for serving and filing an amended complaint. An amended complaint has been filed, and the defendants (other than Mrs. Barbier) have moved for dismissal.

For a period in this case, Barbier was represented by counsel, but is now again proceeding pro se. Since the papers indicated that there had been matrimonial litigation in the New Jersey Courts, the Court called for submission of a copy of the record of the proceedings there, and these have been supplied. From that record, the following brief history is culled. Page references are to the Appendix to Barbier's brief on appeal to the Superior Court, Appellate Division, Docket A–432–78, which is being marked as an exhibit here.

The Barbiers were married January 17, 1970 (56a; 67a). In June, 1976, Barbier filed an affidavit on complaint for custody in the Juvenile and Domestic Relations Court (Passaic). He said that since April 11, 1976 Mrs. Barbier was withholding the custody of the two minor children then aged 5 and 4 from Barbier, and that the best interest of the children called for return of their custody to Barbier. (1a, Case No. D–1244–75). However, it also appears that Mrs. Barbier had earlier filed in the same court for failure of Barbier to provide

adequate support and maintenance of his family, and that a temporary order was entered to pay $40 a week, with direction to Barbier's attorney to file a complaint for visitation. (3a, Case No. D–1344–73). The affidavit for custody (1a) was evidently the response to that direction.

The history and ultimate fate of the proceedings in the Juvenile and Domestic Relations Court are far from clear other than that Judge Nitto, a named defendant here, evidently entered orders for custody, visitation and support.

In any event, the next round of litigation began with the filing, on June 14, 1977 of a complaint by Barbier for divorce. This was filed by counsel in the Superior Court, and it charged desertion by Mrs. Barbier on March 20, 1976, a desertion said to have continued for more than 12 months. It recited that there were two sons born, then aged 6 and 5 years, "both of which children are presently in the custody of and residing with" Mrs. Barbier. The complaint sought a divorce, an order permitting Barbier fair and reasonable rights of visitation with the children, and the setting of a fair and reasonable sum for their support and maintenance. There was no request for custody. (56a to 58a).

Mrs. Barbier filed an answer denying the desertion, and setting out a counterclaim for extreme cruelty with 15 separate categories thereof dating back to 1972. She sought a divorce, alimony and child support, equitable distribution of property, counsel fees and costs (67a et seq.).

Following various amendments to the pleadings and other proceedings, a dual judgment of divorce was entered November 17, 1978. This judgment recited that since the parties had been separated for 18 months, a time which accrued while suit was pending, both were entitled to a divorce (i. e., "no-fault"). It provided no alimony since Mrs. Barbier was gainfully employed. Custody was awarded to Mrs. Barbier, with visitation rights specified in Barbier. Child support was set at $50. a week. Barbier was directed to maintain two existing life insurance policies and pay the premiums. Arrearages for child support were set at $1,180., the amount to be docketed as a judgment. The disposition of allowance for counsel fees and costs, and accountants' fees, was reserved pending further application. (273a, et seq.).

In early January, 1979, Barbier filed notice of appeal to the Superior Court, Appellate Division (375a), and that appeal is yet pending.

It is to be noted that at no time since the affidavit on complaint for custody in the Juvenile and Domestic Relations Court (Passaic) has Barbier asked the New Jersey Courts for an award of custody. It is also to be noted that whatever is charged against Judge Nitto can only be grounded on judicial action by him in the proceedings in the Juvenile and Domestic Relations Court (Passaic), a matter obviously long since closed with no appeal taken so far as is shown. The award of custody by the Dual Judgment for Divorce of November 17, 1978, on the other hand, was made by Judge Newman, who evidently handled the entire Superior Court matrimonial litigation from beginning to end, in Morris County.

The core of Barbier's complaint evidently is that the provisions of N.J.S.A. 9:2–3 and 9:2–4 embody an illegal discrimination against him on account of his sex (i. e., as father of the children). The text of these two provisions is set out in the footnote.[1]

1. The statute text is:
   9:2–3. Custody of children of parents living separately; action in Superior Court; powers of court; judgments; mother's right to custody; exclusion from hearing; records not open to public inspection

When the parents of minor children live separately, or are about to do so, the Superior Court, in an action brought by either parent, shall have the same power to make judgments or orders concerning their care, custody, education and maintenance as concerning children whose parents are divorced. The minor child when in the actual care and custody of the mother in such cases, shall not be taken by the father of such child forcibly or against the will of the mother from her custody, and the court having jurisdiction in the premises shall have authority to make such

In respect to N.J.S.A. 9:2–3, his complaint focuses on the sentence:

"The minor child when in the actual care and custody of the mother in such cases, shall not be taken by the father of such child forcibly or against the will of the mother from her custody . . ."

In respect to N.J.S.A. 9:2–4, his complaint evidently is that judicial interpretation of the act tends to favor an award of custody to the mother "when the child is of tender years."

█ Neither of these claims asserts any basis for naming the Governor, the Attorney General or Judge Nitto as defendants. His claim, if any, is against Mrs. Barbier on the theory that he was prevented by N.J.S.A. 9:2–3 from taking the children away from her when she left him in 1976, or that Judge Newman's award of custody to her was grounded on judicial interpretation of N.J.S.A. 9:2–4 in her favor because the children are of tender years.

█ It is proper, of course, to give notice to the Governor and Attorney General of the pendency of a private action in which it is claimed that a State Statute is unconstitutional. In fact, no federal court would proceed with such a private suit without affording the State an opportunity to apply to intervene. See, e. g., 28 U.S.C. Sec. 2284(2), and F.R.Civ.P. 24.

█ No claim is asserted against Judge Nitto. He, if anything, entered a custody order in the Passaic County proceedings and if any valid claim exists, it should have been raised in that proceeding and on appeal from any final order or judgment in respect to custody. Since it was not, the judgment entered there cannot be attacked collaterally here. No issue of jurisdiction or fraud being involved, that judgment is entitled to full faith and credit here, 28 U.S.C. Sec. 1738. This is aside from the matter of judicial immunity from suit for judicial conduct within the judge's jurisdiction. Since no fact allegations are made about Judge Nitto, and since no remedy or relief can be granted against him, the complaint will be dismissed as to him for failure to state a claim on which relief can be granted, F.R. Civ.P. 12(b)(6).

Otherwise, the case will be regarded as in which Mrs. Barbier is the named defendant,

orders and judgments as will protect the mother in the maintenance of such control and custody until otherwise ordered by the court having jurisdiction. If the minor child or minor children have not, at the time of the commencement of the action, reached the age of sixteen years, and if it is represented to the court by affidavit or under oath that evidence will be adduced involving the moral turpitude of either parent, or of such minor child or children, or that evidence will be adduced which may reflect upon the good reputation or social standing of the child or children, then the court shall admit to the hearing of such case only such persons as are directly interested in the matter then being heard. The records of such proceedings, including all papers filed with the court, shall be withheld from indiscriminate public inspection, but shall be open to inspection by the parents, or their attorneys, and to no other person or persons except by order of the court made for that purpose.

9:2–4. Parents' right to custody equal; wishes of child; preference of father over mother; orders and judgment of court; removal of child from state

In making an order or judgment relative to the custody of the children pending a controversy between their parents, or in regard to their final possession, the rights of both parents, in the absence of misconduct, shall be held to be equal, and they shall be equally charged with their care, nurture, education and welfare, and the happiness and welfare of the children shall determine the custody or possession. If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof.

The court may make the necessary orders and judgments from time to time in relation to such custody or possession, but the father, as such, shall not have preference over the mother as to the award of custody of such minor child if the best interests of the child otherwise may be protected, and in no case shall the court having jurisdiction in this State over the person and custody of any minor permit such child to be removed from this State where the mother or father resides in this State and is the suitable person who should have the custody of such child for its best welfare.

**132**

and in which the Governor and Attorney General were noticed of the attack on the State Statutes in that private suit, and have intervened (at least as amicus curiae) to express the position of the State. Otherwise than in this format, no conduct has been asserted on the part of these officials to support any judgment against them. In sum, the real parties in interest are Barbier and Mrs. Barbier, and the issue raised involves the validity of the two statutes mentioned.

As to the first, the provision of N.J.S.A. 9:2–3 which declares that the father shall not take a minor child forcibly and against the will of the mother when she is in the actual care and custody, the issue raised is entirely hypothetical in this case. The section, read as a whole, deals only with conduct *before* a court of competent jurisdiction enters an order touching on the matter of custody. It forbids "self-help" conduct by the father to the extent indicated.

The courts having jurisdiction are the Juvenile & Domestic Relations Courts, created by N.J.S.A. 2A:4–3, and given jurisdiction over matters of support or temporary custody of children concurrently with the Superior Court by N.J.S.A. 2A:4–18(b); and the Superior Court, created by *N.J.Const.*, 1947, Art. 6, sec. 1, par. 1, given original general jurisdiction throughout the State in all causes by *N.J.Const.*, 1947, Art. 6, sec. 3, par. 2, and the authority to make custody and support orders by N.J.S.A. 2A:34–23, aside from being invested with all of the jurisdiction, functions, powers and duties of the former Court of Chancery by *N.J. Const.*, 1947, Art. 11, sec. 4, par. 3.

Insofar as the Passaic County proceedings are concerned, a temporary order was entered June 7, 1976 in No. D–1344–73(3a), which also called for filing a complaint for visitation, and that was evidently attended to in No. D–1244–75(1a).

Whatever temporary custody order was entered in Passaic County was replaced by the provisions of the Dual Judgment of Divorce, entered November 17, 1978 in the Superior Court (Morris), No. M–21344–76, which placed custody in the mother subject to the father's visitation (275a).

■ Once any order was entered by a court of competent jurisdiction, any attempt to take custody from the parent in whom it was placed would violate the court order, not N.J.S.A. 9:2–3. Since court orders have been entered, the statute complained of does not apply and the attack on the statute is hypothetical. Thus, there is no real "case or controversy" between the real parties in interest on this issue and the Court is without jurisdiction to decide it.

■ Even were this not so, the Court would abstain on the point because the language complained of is capable of a saving construction if it be defective. Consideration of such a saving construction is for the courts of the State in the first instance, and not for this Court. This is not a case grounded on diversity of citizenship, for which this Court would sit as though it were the Superior Court.

The second issue, directed at N.J.S.A. 9:2–4, amounts to a collateral attack on the judgment of November 17, 1978. Taken in its most favorable light, the claim amounts to one saying that the judgment in respect to custody was influenced by the statute which, although neutral on its face, has been read to favor the award of custody to the mother when the child is of tender years.

Assuming all this to be so, an independent action in this court, supposedly grounded on *U.S.Const.* Amend. 14 and 42 U.S.C. Sec. 1983, cannot be sustained.

■ In the first place, such actions cannot be filed as a substitute for appeal in the usual course. The federal courts do not sit as appellate tribunals to review judgments of State courts, except by appeal or by writ of certiorari in the Supreme Court of the United States pursuant to 28 U.S.C. Sec. 1257(2) and (3), after the highest court of the State has rendered final judgment or decree.

In the second place, even were this not so, whatever the statute says, and whatever its judicial interpretation may be, these considerations are merged in the Superior Court judgment of November 17, 1978. Barbier was free to raise the constitutional issue in

that action. He not only failed to do so, by merely asking for visitation rights rather than custody, but he failed to raise the issue in his brief on appeal to the Appellate Division.

 By reason of New Jersey's "single controversy" doctrine, *Falcone v. Middlesex, etc.,* 47 N.J. 92, 219 A.2d 505 (1966), as well as by established principles of res judicata, Barbier cannot raise the issue by a separate suit, after judgment and pending appeal. The State courts have concurrent jurisdiction with the federal courts over suits brought under 42 U.S.C. Sec. 1983. See, *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and especially footnote 17 to the dissent of Mr. Justice Brennan, and *Peper v. Princeton,* 77 N.J. 55, 389 A.2d 465 (1978).

This analysis shows that the case is one that might well be disposed of by summary judgment for all defendants. To do so, however, would implicate an adjudication on the merits which might in turn deprive Barbier of whatever opportunity he may have to raise and argue the constitutional questions before the Superior Court, Appellate Division, if that Court should be inclined to allow him to do so.

The amended complaint will accordingly be dismissed as to Judge Nitto for failure to state a claim upon which relief can be granted, F.R.Civ.P. 12(b)(6), and as to all other parties for lack of jurisdiction of the court.

### APPENDIX

The history of the Court of Chancery and its successor, the Superior Court, is worth noting briefly in this context.

By *N.J.Const.* 1776, Art. 8, the governor was constituted as the chancellor. By *N.J. Const.* 1844, Art. 6, sec. 4, par. 1, it was provided that "The Court of Chancery shall consist of a chancellor", and under both provisions the jurisdiction and modes of remedy were the same as those of the Court of Chancery in England, *West v. Paige,* 9 N.J.Eq. 203 (Ch. 1852). See *In re Vice Chancellors,* 105 N.J.Eq. 759, 148 A. 570 (Ch. 1930); *Pennsylvania R. Co. v. National Docks, etc.,* 54 N.J.Eq. 647, 35 A. 433 (E. &

A.1896). The jurisdiction and powers of the Court of Chancery may not be impaired by the Legislature. *Ex parte Hague,* 104 N.J.Eq. 31 (Ch. 1929), *aff'd,* 104 N.J.Eq. 369, 145 A. 618 (E. & A.1929).

The first statute providing for divorce proceedings in the Court of Chancery was the Act of December 2, 1794, Paterson's Laws, p. 143. For the early history, see *Wallace v. Wallace,* 62 N.J.Eq. 509, 50 A. 788 (Ch. 1901), *rev'd on other grounds,* 65 N.J.Eq. 359, 54 A. 433 (E. & A.1903).

At common law, the father was the natural guardian, *State v. Stigall,* 22 N.J.L. 286 (Sup. 1849), but this right was held to be subject to statutory change more than 100 years ago, *Bennet v. Bennet,* 13 N.J.Eq. 114 (Ch. 1860). The language of N.J.S.A. 9:2–4 stating that "the father, as such, shall not have preference over the mother" reflects the statutory change to neutralize that common law rule, going back at least to P.L. 1860, p. 437 and P.L. 1871, c. 48, sec. 6 (Rev.1877, p. 319, sec. 27). See, also, *English v. English,* 32 N.J.Eq. 738 (E. & A.1800), indicating that the view of equal rights in the parents, with welfare of the child the prime consideration, had been established even before the statutory changes.